# United States District Court
### for the
# Eastern District of New York

| |
|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>                                                              *Plaintiff*,<br><br>-against-<br><br>ALLIANCE HEALTH NETWORKS, LLC, formerly Alliance Health Networks, Inc.; INGRAM MEDICAL ADMINISTRATION, INC., also known as Ingram Medical; and MEDSOURCE RX PHARMACY, LLC, doing business as Medsource Diabetic, Medsource RX, and Your Diabetic Pharmacy,<br><br>                                                              *Defendants*. |

## CLASS-ACTION COMPLAINT

### INTRODUCTION

1.      This action arises out of telephone calls, made by or on behalf of Alliance Health Networks, LLC, formerly Alliance Health Networks, Inc.; Ingram Medical Administration, Inc., also known as Ingram Medical; and Medsource Rx Pharmacy, LLC, doing business as Medsource Diabetic, Medsource-Direct, Medsource RX, and Your Diabetic Pharmacy. The telephone calls used an artificial or prerecorded voice that delivered a message to advertise the commercial availability or quality of diabetic-testing equipment (the "Robocalls").

2.      The legal claims arise under a federal statute and a New York statute: the Telephone Consumer Protection Act, 47 U.S.C. Section 227 ("TCPA"), and New York General Business Law "(GBL") Section 399-p.

3.      Plaintiff brings this action individually and as a class action on behalf of all persons to whose residential or cellular telephone number one or more Robocalls was placed (the "Federal

1

Class") during the period beginning four years prior to the commencement of this action until the date of said commencement (the "Federal Class Period").

4.   Plaintiff also brings this action individually and as a class action on behalf of all persons who received a Robocall on a New York telephone number, *i.e.* a telephone number having an area code of 212, 315, 347, 516, 518, 585, 607, 632, 656, 716, 718, 845, 914, 917, or 929 (the "New York Class"), during the period beginning three years prior to the commencement of this action until the date of said commencement (the "New York Class Period").

5.   Plaintiff seeks, individually and on behalf of the other Federal Class Members and New York Class Members, statutory damages, injunctive relief, legal fees, and costs.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over Plaintiff's federal-law claims under 28 U.S.C. Section 1331, and has jurisdiction over Plaintiff's state-law claims under 28 U.S.C. Sections 1332(d)(2)(A) and 1367(a).

7.   The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

8.   Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2).

## PARTIES

9.   Plaintiff, Todd C. Bank ("Bank"), and was and is, at all relevant times herein, a

10.   Defendant, Alliance Health Networks, LLC, formerly Alliance Health Networks, Inc. ("Alliance"), is a Delaware limited-liability company with a principal place of business at 9883 South 500 West, Sandy, Utah  84070.

11.   Defendant, Ingram Medical Administration, Inc., also known as Ingram Medical ("Ingram"), is a Utah corporation with a principal place of business at 9883 South 500 West, Sandy, Utah  84070.

2

12. Defendant, Medsource Rx Pharmacy, LLC, doing business as Medsource Diabetic, Medsource-Direct, Medsource RX, and Your Diabetic Pharmacy ("Medsource"), is a Utah limited-liability company with a principal place of business at 9883 South 500 West, Sandy, Utah 84070.

## APPLICABLE LAW

A. **Regulation of Certain Calls to Residential and Cellular Telephone Numbers**

   (i) **Telephone Consumer Protection Act, 47 U.S.C. 227 ("TCPA")**

13. With respect to residential telephone lines, the TCPA makes it "unlawful . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B).

14. With respect to telephone numbers assigned to a cellular telephone service, the TCPA makes it "unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15. Recipients of calls that are made in violation of 47 U.S.C. Section 227(b)(1) may bring an action to recover, for each violation, the greater of the monetary loss caused by the violation or $500. *See* 47 U.S.C. Section 227(b)(3). If the court finds that a defendant willfully or knowingly violated Section 227(b), the court may increase the award by up to $1,000 per violation. *See id.*

   (ii) **Liability of Entities That Do Not Directly Place Illegal Calls**

16. As explained by the Federal Communications Commission ("FCC"), the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995); *see*

*also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667, ¶ 7 (2005) ("a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."); *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013) (with respect to violations of Section 227(b), a seller can be vicariously liable for unlawful calls placed by third parties). *Accord*, *Savanna Group., Inc. v. Trynex, Inc.*, No. 10 -cv-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2013); *Mey v. Monitronics Int'l, Inc.*, 5:11-cv-90, 2013 WL 4105430, at *4-*5 (N.D. W. Va. Aug. 14, 2013); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084-1085 (C.D. Cal. 2012).

**B.     New York General Business Law Section 399-p**

17.    New York General Business Law Section 399-p(3)(a) proivides that, "[w]henever telephone calls are placed through the use of an automatic dialing-announcing device, such device shall do all of the following: state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the address, and telephone number of the person on whose behalf the message is transmitted, provided such disclosures are not otherwise prohibited or restricted by any federal, state or local law is based on the fact that the robocalls did not to comply with that provision's identification requirements." GBL § 399-p(3)(a).

18.    Persons whose rights under Section 399-p are violated are entitled, pursuant to New York General Business Law Section 399-p(9), to the greater of actual damages or $50 per violation, injunctive relief, and reasonable legal fees; and, in the event that a violation was committed willfully or knowingly, three times their actual damages, in a total amount of up to $1,000.

**FACTS**

19.   On or about November 7, 2014, Bank received, on his residential telephone number, two telephone calls that produced the following caller identification: "Brewster, 845-363-8711" (the "Plaintiff's Robocall).

20.   Bank's Robocalls were made with automatic equipment that incorporates a storage capability of telephone numbers to be called and is used, working alone or in conjunction with other equipment, to randomly, or sequentially, disseminate a prerecorded message to the telephone number called without the use of an operator.

21.   Upon answering Bank's Robocalls, an artificial and/or prerecorded voice asked several questions pertaining to a medical issue and insurance.

22.   Bank's Robocalls were made by, or on behalf of, or with the authorization of, Alliance, Ingram, and Medsource.

23.   Bank's Robocalls did not state, at the beginning of the call, the name of the person or on whose behalf the message was being transmitted.

24.   Bank's Robocalls did not state, at the end of such message, the address and telephone number of the person on whose behalf the message was transmitted.

25.   Bank's Robocalls were among of thousands of telephone calls that were materially or literally identical to Plaintiff's Robocall both in method and in substance.

26.   Bank's Robocalls and the calls to the other recipients were made without the recipients' prior consent.

**FIRST CAUSE OF ACTION**

27.   Plaintiff repeats and re-alleges, and incorporates herein, each and every allegation contained in paragraphs "1" through "26" inclusive of this Complaint as if fully set forth herein.

28.   The placement of Robocalls to Bank and the other Members of the Federal Class, as

5

set forth herein, violated 47 U.S.C. Section 227(b)(1).

29. Bank and Members of the Federal Class are entitled to statutory damages of $500 per violation pursuant to 47 U.S.C. Sections 227(b)(3)(B).

30. In the event that Alliance, Ingram, and Medsource willfully or knowingly violated 47 U.S.C. Section 227(b)(1), Bank and the other members of the Federal Class are entitled to up an additional $1,000 per violation pursuant to 47 U.S.C. Sections 227(b)(3)(C).

31. Bank and the other Members of the Federal Class are entitled to an Order, pursuant to 47 U.S.C. Section 227(b)(3)(A), enjoining Alliance, Ingram, and Medsource from violating 47 U.S.C. Section 227(b)(1).

## SECOND CAUSE OF ACTION

32. Bank repeats and re-alleges, and incorporates herein, each and every allegation contained in paragraphs "1" through "26" inclusive of this Complaint as if fully set forth herein.

33. The placement of Robocalls to Bank and the other Members of the New York Class, as set forth herein, violated New York General Business Law Section 399-p(3)(a).

34. Bank and the other Members of the New York Class are entitled to statutory damages of $50 pursuant to New York General Business Law Section 399-p(9).

35. Bank and the other Members of the New York Class are entitled to an Order, pursuant to New York General Business Law Section 399-p(9), enjoining Alliance, Ingram, and Medsource from violating New York General Business Law Section 399-p(3)(a)

36. Bank and the other Members of the New York Class are entitled to reasonable legal fees pursuant to New York General Business Law Section 399-p(9)**.**

## CLASS ALLEGATIONS

37. Bank brings this action as a Class Action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons to whose residential or cellular telephone

number Alliance, Ingram, and Medsource, or third parties acting with the authorization of Alliance, Ingram, and Medsource, placed one or more Robocalls (the "Federal Class"), during the period beginning four years prior to the commencement of this action until the date of said commencement (the "Federal Class Period").

38. Bank also brings this action as a Class Action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons who received a Robocall on a New York telephone number (*i.e.* a telephone number having an area code of 212, 315, 347, 516, 518, 585, 607, 632, 656, 716, 718, 845, 914, 917, or 929 (the "New York Class"), during the period beginning three years prior to the commencement of this action until the date on which this action is commenced (the "New York Class Period").

39. Bank believes that there are thousands of individuals whose claims are similar to Bank's claims, and, furthermore, that Bank's claims are typical of the claims of absent Class Members. Members of each Class have sustained damages arising out of Alliance, Ingram, and Medsource's wrongful conduct in the same manner in which Bank has sustained damages arising out of Alliance, Ingram, and Medsource's unlawful conduct.

40. Bank will fairly and adequately protect the interests of each Class. Bank has no interests that are antagonistic to, or in conflict with, the Members of the Classes. Indeed, Bank's interests are, for purposes of this litigation, coincident with the interests of the other Class Members.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because each of the Classes are so numerous that joinder of all Members is impracticable, and because the damages suffered by most of the individual Members of the Classes are too small to render prosecution of the claims asserted herein economically feasible on an individual basis, the expense and burden of individual litigation makes it impractical for Members of the Classes to adequately address the wrongs complained of herein. Bank knows of no

7

impediments to the effective management of this action as a class action.

42. Common questions of law and fact predominate over questions that affect only individual Federal Class Members. Among those questions are:

(i) whether Alliance, Ingram, and Medsource, or third parties acting with the authorization of Alliance, Ingram, and Medsource, placed telephone calls using an artificial or prerecorded voice that delivered a message to residential or cellular telephone lines;

(ii) whether the telephone calls at issue violated the TCPA;

(iii) whether Alliance, Ingram, and Medsource willfully or knowingly violated the TCPA;

(iv) whether the Members of the Federal Class are entitled to damages as a result of Alliance, Ingram, and Medsource's violations of the TCPA, and, if so, how much; and

(v) whether the Members of the Federal Class are entitled to injunctive relief as a result of Alliance, Ingram, and Medsource's violations of the TCPA.

43. Common questions of law and fact predominate over questions that affect only individual New York Class Members. Among those questions are:

(i) whether Alliance, Ingram, and Medsource violated New York General Business Law Section 399-p(3)(a);

(ii) whether the Members of the New York Class are entitled to damages as a result of Alliance, Ingram, and Medsource's violations of the New York General Business Law;

(iii) whether the Members of the New York Class are entitled to injunctive relief as a result of Alliance, Ingram, and Medsource's violations of the New York General Business Law; and

(iv) whether the Members of the New York Class are entitled to reasonable legal fees as a result of Alliance, Ingram, and Medsource's violations of the New York General Business Law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a) Pursuant to 47 U.S.C. Section 227(b)(3)(B), statutory damages of $500 per violation of 47 U.S.C. Section 227(b)(1) for Plaintiff and the other Members of the Federal Class;

(b) Pursuant to 47 U.S.C. Section 227(b)(3)(C), up to $1,000 of statutory damages for Plaintiff and the other Members of the Federal Class, in addition to the statutory damages prayed for in the aforementioned paragraph, if the Court finds that Defendants' violations were made knowingly or willfully;

(c) Pursuant to 47 U.S.C. Section 227(b)(3)(A), an order enjoining Defendants from violating 47 U.S.C. Section 227(b)(1);

(d) Pursuant to New York General Business Law Section 399-p(9), damages of $50 per violation of New York General Business Law Section 399-p(3)(a) for Plaintiff and the other Members of the New York Class;

(e) Pursuant to New York General Business Law Section 399-p(9), an order enjoining Defendants from violating New York General Business Law Section 399-p(3)(a); and

(f) An award, to Plaintiff and the other Members of each Class, of the costs and disbursements of this action, and reasonable legal fees, and such other and further relief as this Court deems just and proper.

Dated: January 14, 2015

Respectfully submitted,

*s/ Todd C. Bank*
TODD C. BANK, ATTORNEY AT LAW, P.C.
Todd C. Bank (TB-6825)
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125

*Counsel to Plaintiff*